**BURCH v. FAIR PARK NAT. BANK.**

No. 14753.

Court of Civil Appeals of Texas. Dallas.

Jan. 8, 1954.

John P. Koons and William A. Pritchard, Dallas, for appellant.

Golden, Croley & Howell and John L. Roach, Dallas, for appellee.

CRAMER, Justice.

Appellant Burch filed this suit in the trial court against appellee Bank and George W. Tyler (not a party to this appeal), alleging he and Tyler had from about April 1, 1951, been partners under the trade name of B & T Motors, in Dallas; that on two occasions prior to the opening of the bank account with appellee Bank, the partnership had its account with another Bank in Dallas and that their manner of handling the account with such other Bank was that Burch, and only Burch, signed all checks; that the partnership bought and sold second hand automobiles; Tyler handled the purchase and sale and Burch the office and financial end; and that when a car was purchased, Burch would sign a check on the partnership account at the closing; or if he was not available, Tyler would draw a draft with all title papers attached, and Burch, when the draft was presented, would, if all papers were in order, then sign a check on the partnership account to pay the draft. Burch further alleged that at the time the account was opened with appellee Bank on October 19, 1951, he talked with Mr. Cartwright, Vice President and Cashier of the Bank, advising him he wanted the account handled the same way as it had been handled with the other Bank; that Cartwright agreed thereto before, and at the time, the account was opened. That thereafter the Bank honored a number of

checks signed by Tyler, alone, on the said partnership account. Burch sought recovery from the Bank on four of such checks (totaling $6,389.70) on which the partnership sustained a loss (and on which Burch had theretofore recovered a judgment against Tyler). This theory of the case was, upon a trial before the court without a jury, fully sustained by Burch's evidence.

Appellee Bank defended by denying the existence of such an agreement as Burch claimed to have made with the Bank; further that Burch knew and authorized each of the checks in controversy and knew Tyler was making withdrawals from the partnership account; that Burch ratified and approved such transactions and accepted the benefits thereunder; that Burch was estopped to deny the Bank's authority to honor such withdrawals; and that the partnership and Burch individually received the benefit of each transaction complained of and neither the partnership nor Burch sustained individually any loss or damage therefrom.

The court, without a jury, having heard all the evidence, made the following findings of fact:

"1. Burch and Tyler were partners in the business of buying and selling used cars before and after the opening of the account with defendant Bank; and Tyler primarily did the trading for the firm. 2. The Bank knew of this partnership arrangement, both from prior dealings and by advices from the partners at and prior to the opening of the account. 3. Burch knew Tyler was buying cars for and on behalf of the partnership and was paying for them with checks and drafts drawn by him alone on the partnership account in the Fair Park National Bank, and Burch acquiesced therein and ratified the several transactions, and turned some of those cars in the course of the partnership business. 4. Each and every transaction complained of by plaintiff in this cause was a partnership transaction, duly authorized, and in each case the partnership received the benefits thereof. No damage to the partnership resulted therefrom. The paying of the Tyler checks by the Bank forms no legitimate basis for Burch's claim against the Bank; his claim resulted from Tyler's activities independent of the payment of checks by the bank that were signed only by Tyler. Burch sought no recovery of Tyler in this cause."

On such findings the court entered judgment for appellee Bank. Burch duly perfected this appeal and here briefs nine points of error, in substance: Error of the trial court in finding as a fact, (1) that Burch knew Tyler was signing checks on and authorizing withdrawals from the partnership account; (2) that Burch acquiesced and ratified Tyler's said transactions wherein Tyler had signed partnership checks; (3) that each transaction was a partnership transaction and duly authorized; (4) that the partnership received the benefits of such transactions; the findings are not supported by any evidence and are against the great preponderance of the evidence; that the trial court erred in finding as a fact (5) that the partnership received the benefit of the transactions because " * * * such finding of fact is refuted by law and principle and is in fact a question of law and involves a conclusion of law rather than a conclusion of fact, and the conclusion reached by the court is in derogation to the law." (6) That Burch's claim " * * * resulted from Tyler's activities independent of the payment of the checks by the Bank which were signed by Tyler, for the reason that such finding is not supported by fact or law." (7) "The judgment of the trial court is against the weight of the evidence and in fact not supported by sufficient evidence and therefore erroneous." (8) "The judgment of the trial court is against and not supported by the law, and therefore erroneous." (9) "The trial court erred in its judgment that the appellant herein take nothing by reason of his action and that the uncontroverted evidence adduced showed that the defendant, Fair Park Na-

tional Bank, was in receipt of a declaration procured at their request and filed with said Bank no later than the 11th day of November, 1951, which declaration provided that only the appellant herein would have the right to draw on the partnership account with the said Bank, and that in spite of said agreement and contrary to same the defendant Bank honored two drafts drawn, one on November 14, 1951, in the amount of $1,075, and one drawn on November 16, 1951, in the amount of $1,514.70, each being drawn by the defendant George W. Tyler and the same being directly contrary to the declaration filed with the defendant Bank, and therefore the judgment rendered by the trial court is contrary to such uncontradicted and controlling evidence."

All points will be considered together.

The only question raised by the points was whether the Bank's evidence controverting the evidence of Burch, was sufficient to make a question of fact for the trial judge and, if so, whether the findings are so against the preponderance of the evidence as to make them manifestly unjust.

Appellant Burch in his brief states:

"Appellant further testified that the instruments in question, on which this suit was based are as follows:

| Payee | Date Bank Account Charged | Amount |
|---|---|---|
| E. M. Piper—Request for Cashiers check Oct 27, 1951 | | $1,450.00 |
| E. M. Piper—Customers Draft Nov. 1, 1951 | | 2,350.00 |
| E. M. Piper—Customers Draft Nov. 14, 1951 | | 1,075.00 |
| E. M. Piper—Customers Draft Nov. 16, 1951 | | 1,514.70 |
| | Total | $6,389.70" |

We will consider each of said items separately in the light of the attacks made in appellant's points.

The $1,450 item originated by a $1,400 draft drawn by Tyler on E. M. Piper through Mercantile National Bank at Dallas, payable to Tyler to secure, for the partnership, the purchase price of a 1948 Cadillac. The draft was marked "Floor Plan." W. Carroll Piper testified he worked for E. M. Piper and his duties were to keep all records, handle all money transactions, all papers and titles covering automobiles floor-planned by E. M. Piper; that he wrote all checks and kept all records personally. Floor-Planning as used here, simply stated, meant that Piper advanced money to B & T Motors to purchase automobiles, and to secure Piper, B & T Motors drew a draft on Piper for the amount of the loan with the certificate of title and all necessary papers attached, which draft with attached title papers was honored by Piper. The automobile involved would remain in possession of B & T Motors until B & T Motors was ready to close a sale thereof, when in order to close such sale B & T Motors would have to take up the amount of the Piper loan or advance plus a brokerage charge in order to get a certificate of title and make a transfer thereof to purchaser.

Piper testified that when Tyler sold the 1948 Cadillac and the title papers were delivered to Tyler, he, Piper, received from B & T Motors $1,450 to be applied, $1,400 to cover the loan and $50 for his carrying charge. Cartwright testified in substance that the $1,450 cashier's check involved here was used "to pay off a Cadillac automobile which we had agreed to finance for J. H. Murphy." Burch testified he personally handled the sale to Murphy for B & T Motors and personally filled out the invoice. The sales price was $1,995, represented by a note for $1,245 and either cash or a trade-in of $750. The evidence further shows that B & T Motors paid

Piper $1,450 (covered by the floor plan draft) and received from the purchaser of the Cadillac a note for $1,245 and the trade-in or cash of $750, showing on such sale a difference of $545 as profit, or book asset, to B & T Motors. Under such record the trial court was justified in making the findings complained of, and rendering judgment thereon against Burch.

The $2,350 item was another floor plan transaction with Piper. The evidence shows Tyler for B & T Motors drew a draft, with certificate of title attached, on Piper for $2,300 to pay for a 1949 Cadillac and that Piper paid the draft. The record of B & T Motors shows a 1949 Cadillac was purchased from H. B. Terrell in San Antonio for $2,300. The evidence further shows that Burch knew that Piper had the title papers and had made the loan to B & T Motors. Burch prepared the B & T Motors record on which there was the notation: "Title at Piper's"; but Burch contended that about ten days before the account was opened with appellee Bank he gave Tyler a draft on Texas Automobile Sales Company for $2,275 plus $25 cash to pay Piper. Piper testified his records show neither the draft nor the $25 was ever received by him. Piper was paid with the $2,300 check here in dispute. Burch sold the car in question to one Hughes for $2,495, $1,500 cash and $895 by a trade-in car which was later sold for $1,000. The $1,500 cash and the $1,000 proceeds of the trade-in were deposited in the B & T Motors account with the Bank. The partnership therefore received the benefit of the floor plan and Cartwright now has a judgment against Burch for the $2,300 (draft for $2,275 and $25 cash delivered by Burch to Tyler which never reached Piper). No error appears in the assignment as to this item.

The $1,075 item was also a floor plan loan by Piper to B & T Motors. The Piper loan was $1,050 on a 1947 Cadillac. Piper was paid off by the $1,075 check on B & T Motors, $1,050 to repay the loan and $25 brokerage charge. Here again B & T Motors received the benefit of the transaction and the evidence is sufficient to support the trial court's findings of fact and judgment thereon as applied to this transaction.

The $1,514.70 item was a Piper floor plan transaction. Piper paid B & T Motors' draft for $1,485 to which was attached the title papers on another Cadillac. The $1,514.70 check on B & T Motors was signed by Tyler. The record supports the trial court's finding that the check involved was to pay off the loan in that transaction. On the theory on which the case was tried and briefed here, the record sustains the trial court's findings and the judgment on said item.

Under the record as a whole the court is sustained by evidence of probative value, on each transaction involved in the appellant's points.

Appellant also asserts that the findings of the court in connection with the above items are each against the great weight of credible testimony so much so that if we permit them to stand it would result in manifest injustice. We have reviewed the entire record and are of the opinion the record does not justify such a holding on either of the transactions involved.

Finding no reversible error presented by appellant's points, they are each overruled and the judgment below is

Affirmed.